# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Daniel McCarville, individually and as a representative of a class of participants and beneficiaries on behalf of the Crane Savings and Investment Plan,<br><br>        Plaintiff<br><br>    v.<br><br>Crane Company and Crane Savings Plan Committee,<br><br>        Defendants. | Case No.: 3:25-cv-00987-SFR<br><br><br><br>February 17, 2026 |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.    Plaintiff's Pre-2024 Breach Of Fiduciary Duty Claims Should Be Dismissed ............................................................................................................ 2

        A.    The Law Does Not Require Forfeitures To Be Used To Increase Plan Benefits ................................................................................... 2

        B.    Plaintiff Does Not Plausibly Plead A Breach Of The Duty Of Prudence ........................................................................................... 3

        C.    Plaintiff Does Not Plausibly Plead A Breach Of The Duty Of Loyalty ............................................................................................. 6

    II.    Plaintiff's Post-2024 Breach of Fiduciary Duty Claims Are Implausible And Also Must Be Dismissed For Failure To Exhaust The Administrative Process ....................................................................................... 7

    III.    Plaintiff's Prohibited Transaction Claims Fail As A Matter Of Law .................... 9

    IV.    Plaintiff's Anti-Inurement Claim Fails As A Matter Of Law .............................. 10

CONCLUSION ................................................................................................................ 10

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Becerra v. Bank of Am.*,
2025 WL 3032922 (W.D.N.C. Aug. 12, 2025)............................................................6

*Brown v. PECO Foods, Inc.*,
--- F. Supp. 3d ----, 2025 WL 3210857 (S.D. Miss. Nov. 14, 2025) .......................................9

*Buescher v. N. Am. Lighting, Inc.*,
791 F. Supp. 3d 873 (C.D. Ill. 2025) ................................................................5, 6, 9

*Cano v. Home Depot, Inc.*,
2025 WL 2589567 (N.D. Ga. Aug. 26, 2025) ........................................................4

*Chao v. Malkani*,
452 F.3d 290 (4th Cir. 2006) ........................................................................10

*Curtis v. Amazon.com Svcs., LLC*,
2026 WL 124323 (W.D. Wash. Jan. 16, 2026)........................................................3

*Davenport v. Harry N. Abrams, Inc.*,
249 F.3d 130 (2d Cir. 2001)..........................................................................9

*Diamond v. Local 807 Labor Mgmt. Pension Fund*,
595 F. App'x 22 (2d Cir. 2014) ......................................................................8

*Donelson v. Meijer, Inc.*,
2025 WL 3754241 (W.D. Mich. Dec. 29, 2025) ..........................................2, 3, 5, 6

*Estay v. Ochsner Clinic Found.*,
2025 WL 2644782 (E.D. La. Sep. 15, 2025) ....................................................6, 9

*Faber v. Metro. Life Ins.*,
2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 648 F.3d 98 (2d Cir.
2011) ...............................................................................................7

*Gardner-Keegan v. W.W. Grainger, Inc.*,
2026 WL 194772 (N.D. Ill. Jan. 26, 2026)..........................................................8

*Heet v. Nat'l Medical Care, Inc.*,
2026 WL 353317 (D. Mass. Feb. 9, 2026) ......................................................6, 7

*Holland v. Arch Coal, Inc.*,
947 F.3d 812 (D.C. Cir. 2020) .......................................................................10

*Hutchins v. HP Inc.*,
  767 F. Supp. 3d 912 (N.D. Cal. 2025), *appeal filed*, No. 25-826 (9th Cir. Feb.
  7, 2025) ...........................................................................................................................2, 5

*Hutchins v. HP Inc.*,
  737 F. Supp. 3d 851 (N.D. Cal. 2024) ........................................................................5, 7, 10

*Leigh v. Engle*,
  727 F.2d 113 (7th Cir. 1984) ...................................................................................................9

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996).................................................................................................................10

*McCabe v. Capital Mercury Apparel*,
  752 F. Supp. 2d 396 (S.D.N.Y. 2010).......................................................................................3

*McManus v. Clorox Co.*,
  2025 WL 732087 (N.D. Cal. Mar. 3, 2025)...............................................................................6

*Perez-Cruet v. Qualcomm Inc.*,
  2024 WL 2702207 (S.D. Cal. May 24, 2024).............................................................................6

*Polanco v. WPP Grp. USA, Inc.*,
  2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025).....................................................................5, 6, 7

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
  718 F. App'x 3 (2d Cir. 2017) ...................................................................................................7

*Russell v. Ill. Tool Works, Inc.*,
  2026 WL 332662 (N.D. Ill. Feb. 9, 2026) .............................................................................6, 7

*Tillery v. WakeMed Health & Hosps.*,
  2026 WL 125784 (E.D.N.C. Jan. 15, 2026) ..........................................................................5, 6

**Statutes**

29 U.S.C. § 1106(b) .....................................................................................................................9

**Regulations**

88 Fed. Reg. 12282 (Feb. 27, 2023) ............................................................................................6

**INTRODUCTION**

The Opposition fails to grapple with the overwhelming majority of case law rejecting similar ERISA-forfeiture claims and cannot save Plaintiff's claims from dismissal.

*First*, Plaintiff's breach of fiduciary duty claims based on the Plan's discretionary forfeiture provision in effect *before* 2024 fail because they depend on the flawed premise that Plaintiff is entitled to additional benefits in the form of free or subsidized Plan services. This theory has no basis in the Plan or ERISA, and courts have consistently rejected it. Further, Plaintiff's duty-of-prudence claim also fails because it asks the Court to assume—*implausibly*—that Defendants acted imprudently by doing what the Plan expressly permitted: allocating forfeitures to cover company contributions. Here again, courts overwhelmingly hold that such discretionary choices cannot support a plausible claim under ERISA. As for Plaintiff's duty-of-loyalty claim, it fails for all of the above reasons and because the Plan's forfeitures indisputably were used to provide promised Plan benefits, consistent with ERISA's "exclusive purpose" requirement.

*Second*, Plaintiff's claims about the use of forfeitures *after* the 2024 Plan amendment took effect should also be dismissed. The claims are implausible because they ignore the distinction between "administrative fees" and "administrative expenses" reflected in the very Plan filings on which the claims rely. And even if they were plausibly alleged, the claims must still be dismissed because Plaintiff has not exhausted the Plan's administrative remedies, as the Second Circuit requires for claims challenging the interpretation and application of plan provisions.

*Third*, Plaintiff's prohibited-transaction and anti-inurement claims fail, too. That is because, among other reasons courts have explained, the allocation of plan forfeitures to participant accounts is neither a "transaction" under ERISA's prohibited transaction provisions nor a prohibited benefit to the employer under ERISA's anti-inurement provisions.

For these reasons, the Amended Complaint should be dismissed under Rule 12(b)(6).

## ARGUMENT

**I.    Plaintiff's Pre-2024 Breach Of Fiduciary Duty Claims Should Be Dismissed**

Before 2024, the Plan expressly permitted the unconditional use of forfeitures to offset employer contributions. Opp. 1, 13. Nevertheless, Plaintiff claims in Counts II-III that by doing so Defendants violated ERISA. *Id*. 10-21. This theory is meritless, as dozens of courts have held.

**A.    The Law Does Not Require Forfeitures To Be Used To Increase Plan Benefits**

Plaintiff's claims under the pre-2024 Plan language depend on the flawed premise that, contrary to decades of regulatory guidance and common fiduciary practice, plan fiduciaries cannot use forfeitures to offset employer contributions, unless and until participants are relieved of all plan-related fees and expenses. Mot. 9-12. In effect, Plaintiff is asking the Court to award him additional benefits provided nowhere in the Plan: free or subsidized plan services.  *Id.* The law does not require this, and nothing Plaintiff argues in his Opposition suggests otherwise.

First, Plaintiff argues that an ERISA plan may *only* charge administrative expenses to participants "[i]f there are no other [p]lan assets available to defray these expenses." Opp. 19. But he cites no authority for this argument, and it flouts the settled principle that plan expenses may lawfully be charged to participants regardless of other plan assets. Mot. 11. While Plaintiff tries to suggest otherwise, his position boils down to an argument that a fiduciary must *always* use forfeitures to cover plan fees and expenses *before* offsetting employer contributions—or else she can be sued and subject to class-wide discovery for a purported breach of fiduciary duty. Opp. 20. But that is not the law. *See* Mot. 16-17 (collecting cases); *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 926-27 (N.D. Cal. 2025), *appeal filed*, No. 25-826 (9th Cir. Feb. 7, 2025) ("*Hutchins II*"); *Donelson v. Meijer, Inc.*, 2025 WL 3754241, at *4 (W.D. Mich. Dec. 29, 2025).

Second, Plaintiff insists that he has not "personally benefitted by payments made to [the Plan's] third-party service providers." Opp. 20-21. This makes no sense. Without those services,

2

the Plan would be unable to function. To use just one example, recordkeeping services provide Plaintiff with ready access to his Plan account to monitor contributions, earnings, and change investments. It is implausible for Plaintiff to claim he enjoys no resulting benefit.[1]

Third, Plaintiff backhands the many cases holding that his theory fails as a matter of law and seeks a "windfall" in the form of free or subsidized plan services. Mot. 9-12. He says "those decisions are simply wrong because they overstate the scope of the relief which the plaintiffs are seeking." Opp. 21. But Plaintiff never explains how all these courts got it wrong or why his claims are any different. As the weight of authority confirms, nothing in the Plan or ERISA required Defendants to exercise their discretion in favor of using forfeitures to cover Plan fees and expenses, rather than allocating those assets to participants as employer contributions under the Plan. *See* Mot. 9-12 (collecting cases); *Donelson*, 2025 WL 3754241, at *2-3 ("[B]ecause [the sponsor] made no promises regarding forfeitures, it did not violate its fiduciary duties"); Order, *Enstrom v. SAS Inst.*, No. 5:24-cv-00105-D-RN (E.D.N.C. Feb. 12, 2026), ECF No. 52 ("The dispositive inquiry is whether participants receive 'the full benefit guaranteed to them by the plan documents,' and here, plaintiffs did."); *Curtis v. Amazon.com Svcs., LLC*, 2026 WL 124323, at *3 (W.D. Wash. Jan. 16, 2026) (similar). Plaintiff's claims fail for these fundamental reasons, and as discussed below.

### B.    Plaintiff Does Not Plausibly Plead A Breach Of The Duty Of Prudence

Plaintiff's duty-of-prudence claim is also implausible because it disregards the discretion

---

[1] Plaintiff's reliance on *McCabe v. Capital Mercury Apparel*, 752 F. Supp. 2d 396, 411 (S.D.N.Y. 2010), is misplaced. Opp. 21. There, the question was whether the fiduciary had acted disloyally by choosing not to obtain an updated stock valuation, which would have increased expenses for the plan—it had nothing to do with the *source* that would have been used to pay the extra expenses. 752 F. Supp. 2d at 410-11. In other words, *McCabe* concerned the reasonableness of plan expenses, which Plaintiff does not contest here. Opp. 19-20

the Plan provides and renders the fiduciary process superfluous. *See* Mot. 17-20. In response, Plaintiff doubles down on his flawed contention that "it is always (or almost always) a more prudent and loyal decision, from the participants' perspective, to use unallocated Plan assets in order to defray administrative expenses first, then to offset company contributions." Opp. 16. But this theory—that fiduciaries must, as a default, always use forfeitures to reduce plan fees and expenses before anything else—is overbroad and implausible because it "removes all discretion, care, prudence, or consideration of the circumstances and the [p]lan documents from [the fiduciary's] decision making." *Cano v. Home Depot, Inc.*, 2025 WL 2589567, at *5 (N.D. Ga. Aug. 26, 2025); *see also* Mot. 17-20 (collecting cases).

Plaintiff responds that "[t]here is no 'other people are doing it' exception to fiduciary duties." Opp. 15-16. Not only does this superficial assertion trivialize the reasoning and holdings of dozens of courts, but it distorts the relevant legal standard. Opp. 15-16. The prudence standard under ERISA considers what a prudent person acting in a like capacity would do in light of the same "circumstances then prevailing" at the time of the challenged decision. Mot. 18; Opp. 14 (acknowledging same). Here, those "circumstances" include decades of legal authority expressly permitting fiduciaries to use forfeitures to offset employer contributions and decades of common fiduciary practice doing just that in reliance on the same authority. Mot. 17-18. Recognizing this, the DOL has expressly rejected the notion that a fiduciary plausibly breaches her duties by exercising plan-given discretion to allocate forfeitures to participants in the form of company contributions, rather than reduced fees or expenses.[2]   Unsurprisingly, then, most courts have

---

[2] *See* Br. for the U.S. Sec'y of Labor, *Barragan v. Honeywell Int'l Inc.*, No. 25-02609, Dkt. 41 (3d Cir. Jan. 30, 2026); Br. for the U.S. Sec'y of Labor, *Cain v. Siemens Corp.*, No. 25-2564, Dkt. 42 (3d Cir. Jan. 23, 2025); Br. for the U.S. Sec'y of Labor, *Wright v. JPMorgan Chase & Co.*, No. 25-4235, Dkt. 41 (9th Cir. Jan. 8, 2026).

rejected Plaintiff's theory as implausible. *See id*. 16-17. This Court should do the same.

Next, Plaintiff tries to flip the pleading (and evidentiary) burden on its head, arguing that Defendants must "put on [] proof through the course of discovery" to demonstrate that their fiduciary process was prudent. Opp. 15. But that is not how it works. Plaintiff only gets discovery if he first pleads a plausible claim for relief under ERISA. Because he has failed to do so, his claim should be dismissed. *See, e.g.*, *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *8 (S.D.N.Y. Oct. 27, 2025); *Hutchins II*, 767 F. Supp. 3d at 927.

Plaintiff also relies heavily on *Buescher v. N. Am. Lighting, Inc*., 791 F. Supp. 3d 873 (C.D. Ill. 2025), one of the few cases declining to dismiss ERISA forfeiture claims. Opp. 17. But far more courts have dismissed forfeiture claims because, like Plaintiff's claims here, once "[s]tripped of conclusory language," they allege "only that defendants (1) followed the [p]lan's language, and (2) provided the benefits required by the [p]lan[.]" *Tillery v. WakeMed Health & Hosps*., 2026 WL 125784, at *6 (E.D.N.C. Jan. 15, 2026); *see also, e.g.*, *Enstrom*, slip op., at 21; *Polanco*, 2025 WL 3003060, at *8-9; *Donelson*, 2025 WL 3754241, at *4.[3] Not only is *Buescher* in the minority, but its reasoning undermines Plaintiff's claim insofar as the court rejected allegations that forfeitures cannot be used to offset *discretionary* contributions to participants, 791 F. Supp. 3d at 886, 894 n.12, which is precisely what the Plan did here, in part, *see* Mot. 15-16, 20.[4]

---

[3]Like the Amended Complaint here, the dismissed complaint in *Tillery* alleged that "Defendants consistently based the decision of how to allocate forfeitures solely on the Company's own self-interest and failed to consider, and have processes in place to consider, the interests of the Plan and its participants." *Compare* Compl., *Tillery*, No. 5:25-cv-00408, Dkt. 1 (E.D.N.C. July 10, 2025) ¶ 35 *with* Am. Compl. ¶¶ 97-99, 120. Similarly, like the Amended Complaint here, the dismissed complaint in *Donelson* alleged that "Defendants did not . . . investigate whether there was a risk that Meijer would default on its matching or discretionary contribution obligations if forfeitures were used to pay Plans' administrative expenses." *Compare* Compl., *Donelson*, No. 1:25-cv-01156, Dkt. 1 (W.D. Mich. Sept. 26, 2025) ¶ 73 *with* Am. Compl. ¶ 113.

[4]Courts have criticized the few forfeiture cases Plaintiff relies on as conclusory and unpersuasive. *See Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862 n.1 (N.D. Cal. 2024) ("*Hutchins I*")

5

Finally, Plaintiff emphasizes that some forfeitures remained unused at year end. Opp. 18. But nothing in ERISA prescribes a deadline by which forfeitures must be used. While Plaintiff references an IRS newsletter from 2010, *id.*, that document says forfeitures should be used "no later than the immediately succeeding plan year."[5]  More importantly, the IRS has since clarified its position though formally proposed regulations requiring only that forfeitures be used within "12 months *following the close of the plan year* in which the forfeitures were incurred." 88 Fed. Reg. 12282, 12285 (Feb. 27, 2023) (emphasis added). Plaintiff does not allege that Defendants failed to do so, let alone that they violated ERISA as a result. *See, e.g.*, Mot. 19; *Tillery*, 2026 WL 125784, at *6-7; *Donelson*, 2025 WL 3754241, at *5.[6]

### C.    Plaintiff Does Not Plausibly Plead A Breach Of The Duty Of Loyalty

Plaintiff's "loyalty" claim fails because: (1) allocating forfeitures to participant accounts to cover employer contributions, by definition, provides a benefit to those participants; and (2) it merely recasts his "prudence" claim, and thus fails for all the same reasons discussed above. Mot. 20-22. Plaintiff's arguments in response do not avoid these conclusions.

---

(characterizing reasoning in *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207 (S.D. Cal. May 24, 2024) as "conclusory" and "not . . . persuasive"); *Enstrom*, slip op., at 20-21 & n.2 (finding "unpersuasive" and "disagree[ing] with" *Buescher*, *Perez-Cruet*, *Russell*, *Becerra v. Bank of Am.*, 2025 WL 3032922 (W.D.N.C. Aug. 12, 2025), and *McManus v. Clorox Co.*, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025)); *Estay v. Ochsner Clinic Found.*, 2025 WL 2644782, at *4 (E.D. La. Sep. 15, 2025) ("the analyses of the majority of courts considering the issue [is] more compelling"); *Polanco*, 2025 WL 3003060, at *7 (finding Plaintiff's cases "unpersuasive").

[5]*See* Am. Compl. ¶ 35 n.3 (citing 2010 Newsletter of the Employee Plans Office of the IRS Tax Exempt & Govt. Entities Div., at 4-5, *available at* https://www.irs.gov/pub/irs-pdf/p4278.pdf).

[6] Since filing his Opposition, Plaintiff submitted a notice of supplemental authority suggesting that recent opinions in *Russell v. Ill. Tool Works, Inc.*, 2026 WL 332662 (N.D. Ill. Feb. 9, 2026), and *Heet v. Nat'l Medical Care, Inc.*, 2026 WL 353317 (D. Mass. Feb. 9, 2026), support his duty-of-prudence claim. ECF No. 40 1-2. But *Russell* did not address a duty-of-prudence theory; the language Plaintiff cites concerned whether defendants were fiduciaries for purposes of a duty-of-loyalty claim. 2026 WL 332662, at *3. And, in *Heet*, the court acknowledged it was adopting the "minority position." 2026 WL 353317, at *2, 6.

First, when Crane allocates forfeitures to offset company contributions, it transfers those funds into participant accounts as employer contributions—that is, a promised Plan benefit. Mot. 21; Opp. 12. That is all that the duty of loyalty requires. Mot. 21.[7] Further, Plaintiff's observation that employer contributions are a required benefit "under the terms of the Plan," Opp. 12, only proves the point that Defendants used forfeitures to provide *Plan-required* benefits.[8]

Second, nothing in ERISA required Defendants to choose what Plaintiff believes to be the "more beneficial" outcome. *See Faber v. Metro. Life Ins.*, 2009 WL 3415369, at *7 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 648 F.3d 98 (2d Cir. 2011) ("ERISA does not . . . create an exclusive duty to maximize pecuniary benefits."). Rather, "where a fiduciary complies with a plan's lawful terms and provides the beneficiaries the benefits they were due under the plan, there is no violation of § 1104(a)'s 'exclusive purpose' requirement," and thus no breach of fiduciary duty.  *Id.* Because that is precisely what Defendants did here, Plaintiff's duty-of-loyalty claim fails as a matter of law. See, *e.g.*, *Polanco*, 2025 WL 3003060, at *3; *Hutchins I*, 737 F. Supp. 3d at 863.

## II.    Plaintiff's Post-2024 Breach of Fiduciary Duty Claims Are Implausible And Also Must Be Dismissed For Failure To Exhaust The Administrative Process

The Opposition confirms that Plaintiff's post-2024 claims fail. Plaintiff argues that there is no "legal support" for treating "administrative fees" distinct from "administrative expenses." Opp.

---

[7] Neither *Russell* nor *Heet* add anything new. Both adopt the same flawed premise—that transferring forfeitures into participant accounts somehow does not provide them with a plan benefit—that the majority of courts have rejected. Mot. 20-21.

[8] Nor does the Complaint plausibly allege Defendants "diver[ted] Plan assets in a way that primarily benefits the employer, rather than primarily benefiting the participants." Opp. 12. The forfeiture assets are allocated *to participant accounts.* Thus, Plaintiff's attempt to distinguish *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3 (2d Cir. 2017), because it "involved no allegation of Plan assets being diverted, in any way, to the benefit of the employer" is unavailing. Opp. at 13-14. *Rosen* found that "recycled allegations" that "simply tweak[] [plaintiff's] other claims to sound in disloyalty," like those pled here, are insufficient to state a plausible duty-of-loyalty claim. 718 F. App'x at 7. Plaintiff does not explain why it should matter that the defendant in *Rosen* was a service provider rather than a plan sponsor. Opp. 13-14.

23. This misses the point entirely: the distinction comes from the *Plan's Form 5500 filings* on which Plaintiff relies, and those terms likewise have different meanings in business practice and in dictionary definitions. Mot. 25. Moreover, the same Forms 5500 state that Plan forfeitures were first used to pay the Plan's administrative *expenses* before reducing employer contributions, as the Plan requires. Thus, the same document on which Plaintiff bases his claim contradicts it.

In any event, Plaintiff has not exhausted the Plan's administrative process and that, too, requires dismissal. Mot. 26-32. None of his contrary arguments suggest otherwise.

First, Plaintiff says he is not seeking to recover Plan benefits. Opp. 24-25. But he elsewhere acknowledges that "he *is* seeking the full value of the *benefit* he is lawfully entitled to receive." *Id.* 19, 21 (emphasis added).[9]

Second, Plaintiff cites *Gardner-Keegan v. W.W. Grainger, Inc.*, 2026 WL 194772 (N.D. Ill. Jan. 26, 2026), to suggest that the Plan is unambiguous, leaving no need for interpretation. Opp. 25. But that case did not even involve an administrative exhaustion argument. Nor did it involve the distinction between "administrative fees" and "administrative expenses," which likely explains why no administrative exhaustion argument was made in that case.

Third, ignoring the case law, Plaintiff simply declares that exhaustion is futile because Defendants will decide his claim. Mot. 31; Opp. 26. But if that were sufficient, a plaintiff could avoid exhaustion in every case by simply declaring it "futile." The courts require much more. *See*

---

[9] Plaintiff's attempt to distinguish *Diamond v. Local 807 Labor Mgmt. Pension Fund*, 595 F. App'x 22 (2d Cir. 2014) fails. As in that case, Plaintiff here seeks "to receive benefits under the Plan that he contends were withheld in violation of the terms of the Plan." 595 F. App'x at 25. Similarly, like the plaintiff in *Diamond*, Plaintiff here alleges that "defendants 'violated the express terms and conditions of the [] [p]lan' and thus breached their 'fiduciary duties.'" *Id.*; *compare* Am. Compl. ¶ 174 ("Defendants failed to discharge their duty to act in accordance with the Plan document by using Forfeited Plan Assets to reduce employer contribution obligations in violation of the explicit terms of the Plan."). Such claims require exhaustion. *Id.*

Mot. 31. Plaintiff's reliance on *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130 (2d Cir. 2001), illustrates the point. Opp. 26. There, the Second Circuit affirmed dismissal on exhaustion grounds, notwithstanding the fact that the named defendant was the plan administrator who would be responsible for interpreting the plan and deciding administrative claims, *id*. at 131, because the plaintiff "never attempted to file a claim for benefits." 249 F.3d at 134. So too, here, Plaintiff's failure to challenge the interpretation and application of the Plan's 2024 forfeiture provision confirms that his claims are premature and must be dismissed.

**III.    Plaintiff's Prohibited Transaction Claims Fail As A Matter Of Law**

As discussed, the choice to pay administrative expenses from one Plan account rather than another is not a *transaction* under ERISA's prohibited transaction rules. Mot. 33 n. 18, 34. Plaintiff simply ignores this and cites to his conclusory allegation that the payment of recordkeeping fees resulted in "thousands of transactions." Opp. 26. But these "transactions" involve the payment of recordkeeping fees from participant accounts—not payments from the Plan's forfeiture account. Opp. 26-27; Am. Compl. ¶ 207. In short, Defendants' decision not to transact using Plan forfeitures is not itself a transaction, much less one that ERISA prohibits. Mot. 33 n. 18, 34.

Plaintiff also argues that 29 U.S.C. § 1106(b) is not limited to "transactions." Opp. 27. But the law disagrees. Even the court in *Buescher*, a case Plaintiff relies on elsewhere, rejected this argument, explaining that "the section prohibits ***transactions*** where those dealing with the plan may have conflicting interests which could lead to self-dealing." 791 F. Supp. 3d at 897 (quoting *Leigh v. Engle*, 727 F.2d 113, 123 (7th Cir. 1984)) (emphasis added). As the court further explained, to construe the choice to allocate forfeitures to offset employer contributions as a self-dealing prohibited transaction "would be to read that choice out of the [p]lan entirely and conclude that [Section] 1106(b) confers a benefit, a result which cannot be tolerated." 791 F. Supp. 3d at 898; *accord Estay*, 2025 WL 2644782, at *6-7; *Brown v. PECO Foods, Inc.*, --- F. Supp. 3d ----,

2025 WL 3210857, at *9 n.6 (S.D. Miss. Nov. 14, 2025). Thus, Plaintiff's own authority confirms that his prohibited transaction claims fail.

Finally, Plaintiff argues that courts rejecting identical claims have misapplied *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996). Opp. 28. Plaintiff points to a purported distinction between "neutral" and non-"neutral" intra-plan transfers. *Id.* But *Spink* never used those terms, nor does Plaintiff cite any authority adopting his proposed gloss on the *Spink* decision. Simply put, whatever benefit Plaintiff believes Crane derived from using forfeitures to provide benefits was merely a lawful "incident[] to the payment of [plan] benefits." *Hutchins I*, 737 F. Supp. 3d at 866.

## IV.    Plaintiff's Anti-Inurement Claim Fails As A Matter Of Law

Plaintiff's anti-inurement theory fails for the same reason—allocating forfeitures directly to participant accounts provides a benefit to participants. *See* Mot. 35-37; *supra* at 6-7. Instead of addressing the relevant case law, Plaintiff cites cases having nothing to do with forfeitures. Plaintiff relies on *Holland v. Arch Coal, Inc.*, 947 F.3d 812 (D.C. Cir. 2020) and *Chao v. Malkani*, 452 F.3d 290 (4th Cir. 2006), to argue that "using plan assets to forgive or offset an employer's funding obligations confers a prohibited benefit on the employer." Opp. 28-29. As the court in *Hutchins* explained, those cases are distinguishable because they "involved outstanding and unpaid amounts owed by the defendants." *Hutchins I*, 737 F. Supp. 3d at 867. By contrast, Plaintiff "has not alleged that [Crane] owes any outstanding or unpaid amounts or that [Crane] has otherwise failed to meet its obligations to provide matching contributions to the Plan." *Id.* Thus, Plaintiff's theory "is without support in the terms of the Plan, the text of ERISA, or case law." *Id.*

### CONCLUSION

For all of the above reasons, the Amended Complaint should be dismissed.

10

Date:  February 17, 2026

Respectfully submitted,

*/s/  Christopher M. Wasil*
Christopher M. Wasil (ct28578)
**MORGAN, LEWIS & BOCKIUS LLP**
One State Street
Hartford, CT  06103
Tel:  (860) 240-2700
Fax:  (860) 240-2701
christopher.wasil@morganlewis.com

*/s/ Christopher Boran*
Christopher Boran *(pro hac vice)*
Morgan, Lewis & Bockius LLP
110 North Wacker Drive, Suite 2800
Chicago, IL  60606-1511
Tel:  (312) 324-1000
christopher.boran@morganlewis.com

*/s/ Gina F. McGuire*
Gina F. McGuire *(pro hac vice)*
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY  10178-0060
Tel:  (212) 309-6000
gina.mcguire@morganlewis.com

*/s/ Abbey M. Glenn*
Abbey M. Glenn *(pro hac vice)*
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
Tel:  (202) 739-5895
abbey.glenn@morganlewis.com

*/s/ Mathew J. McKenna*
Mathew J. McKenna *(pro hac vice)*
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA  02110-1726
Tel:  (617) 341-7700
mathew.mckenna@morganlewis.com

*Attorneys for Defendants*

11